UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 4:18CV1574 HEA |
| | ) | |
| CITY OF SAINT LOUIS, MISSOURI, et al., | ) ) | |
| | ) | |
| Defendants, | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants City of St. Louis, Gerald Leyshock, Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno's Motion to Dismiss and Alternative Motion to Strike, [Doc. No. 29]. Plaintiff opposes the Motion, which has been fully briefed. For the reasons set forth below, the Motion to Dismiss is denied in part and granted in part. The Motion to Strike is denied.

## Facts and Background[1]

This is one of several cases filed in this District arising out of the actions of St. Louis Metropolitan Police Department ("SLMPD") officers during peaceful

---

[1] The recitation of facts is taken from Plaintiff's first Amended Complaint and is set forth for the purposes of the pending motion to dismiss. The recitation does not relieve any party of the necessary proof of any stated fact in future proceedings.

1

protests following the September 15, 2017 verdict in *State of Missouri v. Stockley*. *See Newbold v. City of St. Louis, Mo.*, No. 4:18-CV-1572 HEA, 2019 WL 3220405 (E.D. Mo. July 16, 2019); *Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019); *Laney v. City of St. Louis, Mo.*, No. 4:18-CV-1575 CDP, 2019 WL 2423308, (E.D. Mo. June 10, 2019); *Laird v. City of St. Louis, Mo.*, No. 4:18-CV-1567 AGF, 2019 WL 2647273 (E.D. Mo. June 27, 2019); *Alston v. City of St. Louis, Mo.*, No. 4:18-CV-1569 AGF, 2019 WL 2869896 (E.D. Mo. July 3, 2019); *Thomas v. City of St. Louis, Mo.*, No. 4:18-CV-1566 JAR, 2019 WL 3037200 (E.D. Mo. July 11, 2019). The first Amended Complaint ("FAC") contains the following allegations:

<u>September 15, 2017</u>

On September 15, 2017, the Circuit Court of the City of St. Louis, Hon. Timothy Wilson, presiding, issued its findings and verdict in *State of Missouri v. Stockley* acquitting former SLMPD officer Jason Stockley of first-degree murder of Anthony Lamar Smith. The verdict prompted some members of the St. Louis community to engage in protests in St. Louis and the surrounding communities. The protests concerned not only the verdict but broader issues, including racism and the use of force by police officers. Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields" and carrying chemical agents.

2

Plaintiff Emily Davis ("Davis") is a St. Louis County resident. On September 15, 2017, Davis went to St. Louis city's Central West End neighborhood to attend a clergy-led gathering in protest of Jason Stockley's acquittal. As Davis approached the intersection of Waterman and Washington,[2] a line of police officers walked into the intersection. Defendant Sergeant Brian Rossomanno ("Rossomanno") was shouting at protestors to leave. As she turned to leave, Davis saw a police officer yank a man's bicycle out from under him, knocking the man down. Davis reached over to try to help the man off the ground. Rossomanno approached Davis from behind, called her by name, and yelled at her to leave the area. Instantly and without warning, Rossomanno sprayed Davis's posterior at close range, and yelled that Davis has two seconds to get out of the area. Without verbal warning or other notice, Rossomanno moved closer to Davis, reached his arm around her front, and sprayed her face and hair. The spray made it difficult for Davis to see, and she was led away to safety by her friend.

Davis heard no orders to disperse prior to getting sprayed. At no time was she breaking the law; Rossomanno made no attempt to arrest her.[3] Davis alleges that an unbiased observer would not have believed that Rosssomanno was in danger when he sprayed Davis.

---

[2] While the Court accepts as true all factual allegations on a 12(b)(6) motion, the Court notes that to its knowledge, Waterman and Washington do not intersect in the area described.

[3] The September 15 section of the FAC includes an allegation that "Ms. Davis was held for approximately 15 hours." This is inconsistent with the other alleged events of September 15. Its inclusion appears to have been erroneous.

September 17, 2017

On September 17, 2017, Davis attended a march in downtown St. Louis. After 9:00 p.m., most activity downtown had ceased. Davis and a friend were returning to Davis' car when police officers blocking Locust Street ordered the ten or fewer civilians in the area to disperse, directing them to head either north or west. Davis and the others tried to exit west on Locust toward Tucker but were met by a line of police vehicles blocking Tucker south of the intersection. Lines of SLMPD officer then advanced from the north and south. Davis heard no dispersal orders or commands. All means of egress were blocked by lines of SLMPD officers. One line of officers began shouting that everyone was being arrested. Davis sat down. The officers yelled at the civilians to "get down."

As Davis sent a phone message to friends that she was being arrested, an SLMPD officer approached, took Davis' phone, and threw it to the ground. A second SLMPD officer ripped the goggles off Davis' face and pointed a spray can at her face while yelling. Davis could not hear the SLMPD officer because the officer's full gas mask covered his face. Davis tried to explain to the officer that she could not understand his commands. The officer continued pointing the spray can at Davis face. Davis turned over to face the ground with her arms spread. A different officer handcuffed Davis "roughly and tightly." Davis saw a compliant friend being sprayed repeatedly in the face with pepper spray, and overheard

officers joking that her friend was so covered in pepper spray that they did not want to handle him.  Davis was taken to a van, photographed, identified and documented.  Her arrest record lists Rossomanno as the arresting officer.

The FAC also contains allegations that none of the individuals inside the crowd of protestors on September 17, 2017 were acting violently and aggressively, yet they were kicked, beaten, dragged, and sprayed with chemical agents.  Further, during and after the arrests of protestors, SLMPD officers were observed high fiving each other, smoking celebratory cigars, taking "selfies" on their cell phones with arrestees against the arrestees' will, and chanting "Whose Streets? Our Streets!"

In addition to the Defendant City of St. Louis, Missouri (the "City"), the FAC names several SLMPD officers as defendants, including six supervisory officers (collectively, "Supervisory Defendants") including the arresting officer, and five "John Doe" SLMPD officers.  Lieutenant Colonel Gerald Leyshock was the incident commander during the events of September 17, 2017.  Leyshock allegedly approved the plan to prevent civilians from leaving the vicinity of Washington Avenue and Tucker Boulevard and to arrest everyone present.  Lieutenant Timothy Sachs allegedly developed the plan described above, deployed the tactical units accordingly, and ordered the use of chemical agents.  Lieutenant Scott Boyher allegedly directed officers under his command to block protestors in

and directed the officers to use force against, and to arrest, protestors. Sergeant Matthew Karnowski allegedly declared the protests an "unlawful assembly," which SLMPD used as a predicate to the arrests and use of the chemical agents. Karnowski also directed the officers under his command to use force against and to arrest protestors. Sergeant Randy Jemerson is a supervisor with the SLMPD's Civil Disobedience Team and directed people to the intersection of Washington and Tucker pursuant to the plan described above. Sergeant Brian Rossomanno also allegedly directed people to the intersection, and was "within arms-length" of the officers who pepper sprayed and used force against protestors. Rossomanno also pepper sprayed Davis without warning on September 15, 2017, and arrested Davis without probable cause on September 17, 2017. The City and these Supervisory Defendants brought the instant Motion to Dismiss. Also named as defendants, but not party to this motion, are John Does #1-5, who are unidentified SLMPD officers. The Doe defendants allegedly arrested, used chemical munitions against, beat, and prevented the movement of Davis. Davis cannot identify the Doe officers because they removed their names tags and wore masks.

Davis asserts 13 counts. Claims made against the individual defendant officers and pursuant to § 1983 include: Fourth Amendment unlawful seizure (Count I), violation of the First Amendment rights to speech and assembly (Count II), and Fourth Amendment excessive force (Count XII). Count IV asserts § 1983

claims against the City alleging municipal liability for the officers' unlawful actions. Count III alleges a conspiracy between all Defendants to deprive Davis' civil rights. Finally, Plaintiff asserts supplemental state-law claims against all Defendants alleging assault (Count V), false arrest (Count VI), false imprisonment (Count VII), abuse of process (Count VIII), malicious prosecution (Count IX), intentional infliction and negligent infliction of emotional distress (Counts X and XI), and battery (Count XIII).

The City and Supervisory Defendants first move to dismiss the FAC pursuant to Federal Rule of Civil Procedure 8(a) which requires a "short and plain statement of the claim." Alternatively, the City and Supervisory Defendants move to strike factual allegations and exhibits regarding the *Stockley* verdict, the nature of the public protests in response thereto, and prior court orders concerning SLMPD actions in response to public protests as immaterial and impertinent under Fed. R. Civ. P. 12(f).

Next, the City and Supervisory Defendants move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The City moves to dismiss the § 1983 claim against it for failing to adequately allege municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The City moves to dismiss the civil conspiracy claim against it as barred by the intracorporate conspiracy doctrine; in addition, the City and Supervisory

7

Defendants argue that the claims underlying the conspiracy claim fail, leaving no viable conspiracy action. The Supervisory Defendants move to dismiss the §1983 claims against them, arguing that the FAC does not show that the Supervisory Defendants personally participated in any constitutional tort.

The City and Supervisory Defendants move to dismiss the state law claims, invoking sovereign immunity as to the City and official immunity as to the Supervisory Defendants. The City also argues that Plaintiff's claim against it for punitive damages arising from state law claims is barred by Missouri law.

**Discussion**

This Court recently addressed the arguments made by the parties here in the context of another *Stockley* protest case, *Newbold v. City of St. Louis, Mo.*, 4:18-CV-1572 HEA, 2019 WL 3220405 (July 16, 2019). In *Newbold*, the City and Supervisory Defendants filed a substantively identical motion to dismiss in response to a complaint that made the same general allegations as the instant case.

In *Newbold*, the Court found two of the defendants' arguments persuasive and dismissed accordingly. First, the Court found that the complaint's factual allegations regarding the City's §1983 municipal liability with respect to an alleged failure to train or supervise were conclusory and insufficient to state a claim. *Id.* at *5. The Court also found that pursuant to Mo. Rev. Stat. § 537.610.3, the plaintiff

8

could not recover punitive damages on his state law claims against the City, or against the Supervisory Defendants in their official capacities.

The Court found the remainder of the motion to dismiss in *Newbold* was without merit. *Id.* Because the factual allegations and exhibits to which the defendants objected were at least relevant to the plaintiff's municipal liability claim, the defendants' motion to dismiss the complaint pursuant to Rule 8(a) or strike pursuant to Rule 12(f) was denied. *Id.* at *4 (citing *Laird*, 2019 WL 2647273, at *4).

Next, the Court found that the § 1983 municipal liability claim against the City based on a policy or custom was well pleaded. Specifically, plaintiff alleged facts concerning the SLMPD's pattern of violating protestors' constitutional rights by using chemical agents on peaceful protestors without warning them or giving them an opportunity to disperse. *Id.* at *5. The Court declined to apply the intracorporate conspiracy doctrine to the §1983 conspiracy action against the City at the pleading stage. *Id.* at *6.

Although the Supervisory Defendants argued that they did not personally participate in any constitutional tort, the Court in *Newbold* found that plaintiff adequately alleged the Supervisory Defendants' direct roles in planning, approving, and executing the alleged uses of force. *Id.* at *7.

9

As to the state law claims, the Court held that the plaintiff adequately pleaded an exception to the City's sovereign immunity under Mo. Rev. Stat. § 537.610.0 in that he alleged the City obtains insurance or self-insures through the Public Facilities Protection Corporation. The Supervisory Defendants' argument that they were entitled to official immunity for the state law claims was rejected because the plaintiff adequately alleged the Supervisory Defendants' bad faith or malice, an exception to official immunity. The Court finally held that the assault, battery, and negligent and intentional infliction of emotional distress claims were not necessarily duplicative of one another, were cognizable under Missouri law, and were allowed as alternatively pleaded claims under Fed. R. Civ. P. 8(d).

As cited in *Newbold*, several judges in this District have examined the same or similar arguments in other *Stockley* protest cases and have reached the same or similar conclusions. *See Aldridge*, 2019 WL 1695982; *Laney*, 2019 WL 2423308; *Laird*, 2019 WL 2647273; *Alston*, 2019 WL 2869896; *Thomas*, 2019 WL 3037200. Upon careful consideration of the parties' arguments and review of the record in this case, this Court finds that its reasoning in *Newbold* applies equally here. Accordingly, the Court reaches the same conclusion.

**Conclusion**

For the foregoing reasons, the City and Supervisory Defendants' Motion to Dismiss will be denied in part; only the § 1983 claim against the City based on a

failure to supervise and train and the requests for punitive damages that are barred by Missouri statute will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss and Alternative Motion to Strike [Doc. No. 29] is **GRANTED in part and DENIED in part**. The motion is **GRANTED** only as to the failure-to-supervise-and-train claim in Count IV (the remainder of Count IV survives dismissal) and the request for punitive damages on the state law claims against the City of St. Louis and against Gerald Leyshock, Timothy Sachs, Scott Boyher, Randy Jemerson, Matthew Karnowski, and Brian Rossomanno in their official capacities. The motion is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' earlier Motion to Dismiss [Doc. No. 17] is **DENIED as moot** by the filing of the Amended Complaint.

Dated this 23rd day of July, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE