UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EMILY DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:18-cv-1574 HEA |
| | ) |
| CITY OF ST. LOUIS, etc., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**

Plaintiff, by leave, has filed a third amended complaint [ECF 101], asserting multiple claims against defendants under 42 U.S.C. §1983. The third amended complaint includes allegations of specific misconduct toward Plaintiff by exactly one individual defendant, but otherwise seeks to import some 50 supervisory police officers into the case on novel theories of group liability for failure to intervene; Plaintiff also alleges an intracorporate conspiracy. The individual defendants named in ECF 101, ¶¶10-21 now seek dismissal of the third amended complaint.[1] Because the Court has already devoted considerable attention to the case, and has previously denied a motion to dismiss, defendants will attempt not to be unduly prolix in this memorandum.

Insofar as pertinent to this motion, Plaintiff alleges that defendants arrested her without probable cause (count I), infringed her First Amendment rights of assembly and freedom to observe and record police activity by arresting and mistreating her (count II), conspired to

---

[1] Defendants concede that a colorable claim of assault and battery is pleaded against defendant Rossomanno with regard to the alleged pepper spraying of plaintiff on September 15. ¶¶141-42, 144, 187

deprive Plaintiff of her constitutional rights (count III), and subjected Plaintiff to excessive force in the course of arresting her (count XII).  Plaintiff has added a claim of liability on the basis of failure of all of the individual defendants (other than defendant Deeken) to intervene to prevent Plaintiff's illegal arrest or subjection to excessive force (count XIII).  In addition, Plaintiff alleges state law claims of assault (count V), false arrest (count VI), abuse of process (count VII), malicious prosecution (count VIII), intentional and negligent infliction of emotional distress (counts IX and X), a novel theory of vicarious liability against defendants O'Toole and Deeken, based on the City Charter (count XI), and a claim of battery (count XIV).

Plaintiff alleges specific misconduct by defendants O'Toole, Leyshock, Sachs, Howard, Boyher, Karnowski, Rossomanno and Jemerson in their supervisory roles.  ECF 101, ¶¶ 52, 53, 108, 134.  Plaintiff also alleges specific misconduct involving direct contact between her and defendant Rossomanno, but only on September 15, 2017.  ¶¶141-42, 153.  None of the other defendants is alleged to have had any direct contact with Plaintiff, nor is it alleged that any officer--identified or unidentified--in fact pepper sprayed her on September 17, 2017.  ¶¶175-76.  Plaintiff does allege that an unidentified officer "ripped" goggles off of her face and another officer "roughly and tightly" handcuffed ("zip-tied") her.  ¶¶175, 179.  Plaintiff does not allege any mistreatment of sufficient duration or within proximity to allow any other individual defendant to act to prevent any mistreatment.  ¶¶173-87.  The gist of Plaintiff's allegations against the defendants--other than Sgt. Rossomanno--is that they all knew there was no probable cause to arrest Plaintiff and that excessive force was used on Plaintiff without a reasonable basis, yet they participated in the mass arrest that captured Plaintiff.  E.g., ¶¶10-17, 60.

Plaintiff admits that there had been violence earlier that night in connection with the group that was to be encircled, and acknowledges that orders to disperse had been given

repeatedly. ¶¶45-46, 126, 128, 153. She also acknowledges that many persons in the group of arrestees, including herself, were sporting masks and goggles, ¶¶93-94, 175, and it is indisputable that a crowd was milling about in the intersection of Tucker and Washington, at least partially blocking the intersection. ¶¶127-129; ECF 23-7 (Ex. G); see also ECF 23-5 (Ex. E), pp. 12-13, 24, 71.

Although the Plaintiff alleges a number of prior incidents in which St. Louis police utilized pepper spray in mass protest situations, ¶¶28-29, 31, there is no allegation in the complaint of any previous conduct of a mass arrest by City police. Also, Plaintiff alleges no medical expenses, lost wages, or any medical treatment of any kind for her alleged injuries, although she does allege "medically diagnosable" emotional distress. ¶281.

1.  **The third amended complaint does not pass muster under the *Twombly-Ashcroft* standard, particularly when the exhibits filed with the second amended complaint are considered.**

As noted above, Plaintiff alleges specific actions by several named defendants, but the supervisory defendants named in paragraph 17 of the third amended complaint are the subject of threadbare and conclusory allegations that wholly fail to allege any personal involvement of those defendants in regard to Plaintiff individually. Such pleading does not meet the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) or *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). This is particularly so if the Court chooses to consider the exhibits that Plaintiff incorporated in the earlier complaints, but now has elided. Ordinarily, exhibits which have been abandoned are not within the purview of a court on a motion to dismiss, but that assumes that the plaintiff rejected or disavowed those exhibits. See, e.g., *Hoefling v. City of Miami*, 811 F.3d 1271, 1277-78 (11th Cir. 2016). Here, however, Plaintiff continues to rely on the decision and

record in the *Ahmad* case. ¶¶42, 93, 122, 126ff. Of course, the record in *Ahmad* is a public record, of which the Court can take judicial notice. F.R.Ev. 201.

Defendants submit that the Court can and should consider the exhibits drawn from *Ahmad* heretofore inserted in the record, ECF 23-4 to 23-7, in evaluating the plausibility of Plaintiff's latest amended complaint. These materials are referenced in the complaint and involve matters central to Plaintiff's claims. See *Ryan v. Ryan,* 889 F.3d 499, 505 (8th Cir. 2018); *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."). Consideration of these exhibits is especially appropriate in the context of the issue of qualified immunity, which is to be resolved at the earliest possible stage of proceedings. E.g., *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

At a minimum, the Plaintiff's allegations against the defendants identified in ¶17 of the third amended complaint are exactly the sort of generic, implausible and conclusory allegations that wholly fail to state a claim of personal involvement of those defendants in any constitutional injury of *this Plaintiff.* *Doran v. Eckold,* 409 F.3d 958 (8th Cir. 2005)(*en banc*); see also *Ashcroft v. Iqbal,* 556 U.S. at 677; *Saucier v. Katz,* 533 U.S. 194, 212 (2001)(Ginsburg, J., concurring); *Calgaro v. St. Louis City (MN),* 919 F.3d 1054 (8th Cir. 2019).

**2. The third amended complaint's §1983 claims based on illegal retaliatory arrest and application of excessive force (counts I, II, XII and XIII) should be dismissed, because the individual defendants are qualifiedly immune to those claims, in that Plaintiff**

4

**does not state a plausible claim that each and every defendant violated Plaintiff's clearly established constitutional rights.**

Defendants respectfully urge the Court to follow *Burbridge v. City of St. Louis,* 430 F.Supp.3d 595 (E.D.Mo. 2019). In that case, Judge Clark held that the individual defendants--including defendants Leyshock, Rossomanno, Jemerson and others named in this case--had at least arguable probable cause to arrest persons who were part of the group assembled at Tucker and Washington on the night of September 17, 2017. No doubt it will be argued that Judge Clark acted on the basis of a different record, and that Judge Sippel has declined to accord Judge Clark's opinion any weight*, Baude v. City of St. Louis*, No. 4:18-CV-1564-RWS, 2020 U.S. Dist. LEXIS 139770 (E.D. Mo. Aug. 4, 2020), but the undisputed facts on which Judge Clark relied are reflected in the record before this Court and on the face of the third amended complaint.

As noted above, liability under 42 U.S.C. §1983 is personal and not vicarious, and so defendants are liable under the statute only for their individual acts. See also *Doe v. Cassel,* 403 F.3d 986 (8th Cir. 2005).,  In assessing the individual acts of the defendants for qualified immunity, the established analysis is, first, did the conduct of the individual defendant at issue violate a constitutional right, and, second, was that right clearly established at the time of the alleged conduct? E.g., *Pearson v. Callahan,* 555 U.S. 223 (2009). In answering the second question, it is critical that the constitutional right not be defined at a high level of generality. E.g., *Mullenix v. Luna,* 136 S.Ct. 305 (2015). "The 'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is 'clear to a reasonable officer that her conduct was unlawful in the situation he confronted.'" *District of Columbia v. Wesby,* 138 S.Ct. 577, 590 (2018).

*Unlawful arrest.* With regard to the allegedly unlawful arrest, the amended complaint as a whole shows that, in fact, the police had probable cause or arguable probable cause to arrest Plaintiff.[2] At the time defendants Leyshock and Sachs determined that a mass arrest should occur if dispersal was not achieved, the amended complaint shows that the following facts were known or had been reliably reported to them: a large crowd was milling about the intersection of Tucker and Washington, in fact impeding traffic; that crowd included persons wearing masks and goggles, suggestive of intentions to confront and resist police; that crowd included persons who had been involved in disorderly activity downtown in the past several hours; that crowd had disregarded repeated orders to disperse; at least some members of that crowd had assaulted or threatened officers earlier; and that similar crowds had resorted to violence on the two preceding nights. See 3rd amended complaint ¶¶42, 96-97; ECF 23-4, p. 261, 296-97; 23-5 (Ex. E, pp. 6-7, 126, 158ff., 183; 23-7 (Ex. G); compare 430 F.Supp.3d 610-12.

The determination of probable cause is an objective one: whether the facts and circumstances known to an officer, or collectively known to the police, at the time would warrant the officer in believing that an offense had been committed and that the arrestee had committed it? E.g., *District of Columbia v. Wesby,* supra. The subjective belief of an officer as to the offense which has been committed is immaterial, as is any subjective animus of the officer. E.g., *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019); *Devenpeck v. Alford,* 543 U.S. 146 (2004). Moreover, in situations of civil disorder, if there are reasonable grounds to believe that a group has been acting and will act as a unit, it is reasonable to treat the group as a unit in assessing probable

---

[2] If the officers had probable cause or arguable probable cause, the "retaliatory arrest" claim of count II fails along with the illegal arrest claim of count I. *Nieves v. Bartlett,* 139 S.Ct. 1715 (2019).  No First Amendment claim is asserted against Sgt. Rossomanno based on the September 15 incident.

6

cause to arrest the group's members. *Bernini v. City of St. Paul,* 665 F.3d 997, 1003-04 (8th Cir. 2012); see also *Carr v. Dist. of Columbia,* 573 F.3d 401, 408 (D.C.Cir. 2009). Above all, the determination of probable cause is made from the standpoint of the officer in the field, based only on the facts known or knowable by the officer, and not in an exercise of judicial hindsight. E.g., *White v. Pauly,* 137 S.Ct. 548, 550 (2017); *Herring v. United States,* 555 U.S. 135 (2009).

In the case at bar, defendants Leyshock, Howard and Sachs had ample probable cause or arguable probable cause to believe that the group milling about Tucker and Washington was a unit, and that the unit had engaged in violence and vandalism previously. It was reasonable to infer that, left undisturbed, the crowd would erupt in further disorder. Although the crowd was not exhibiting violent behavior as it milled about Tucker and Washington, probable cause to arrest does not become stale. E.g., *United States v. Watson,* 423 U.S. 411 (1976). It took time to assemble the necessary force to accomplish the mass arrest. Under the circumstances, arrest of the members of the unit was entirely proper. this is so even with regard to Plaintiff, who claims that she was accidentally swept into the net. Under the circumstances, Leyshock, Howard and Sachs could reasonably have believed that everyone milling about the intersection was part of the unit, particularly since those present had apparently disregarded multiple dispersal orders.[3]

At a minimum, defendants had arguable probable cause to arrest Plaintiff. Even if the officers were mistaken about the nature of the crowd and Plaintiff's role in it, that mistake was reasonable. Given all of the circumstances, the officers could reasonably believe that the crowd was acting as a unit and that its members accordingly could be treated as a unit. In addition, the officers could reasonably believe that the members of the crowd had violated a variety of laws

---

[3] That Plaintiff did not hear warnings does not mean warnings were not given. E.g.,*Malone v. Hinman,* 847 F.3d 949 (8th Cir. 2017). Indeed, Plaintiff did not arrive until after multiple warnings had been given, so the issue of warnings as to him is immaterial. ¶138.

7

relating to impeding traffic, unlawful assembly, and peace disturbance generally, e.g., Mo.Rev.Stat. §§574.010, 574.040, 574.060.  Compare *White v. Jackson,* 865 F.3d 1064 (8th Cir. 2017) with *Bernini v. City of St. Paul,* 665 F.3d 997 (8th Cir. 2012); see also *Burbridge,* supra.

      In this case, the factors impelling Lt.Col. Leyshock and Lt. Sachs to decide to arrest the group including Plaintiff has been delineated above.   Even if defendants Leyshock and Sachs were mistaken in believing that the group milling about Tucker and Washington was acting as a unit and presented a danger to the public, that mistake, in light of all the circumstances, was reasonable, because they reasonably believed that it was important to control a chaotic and potentially combative scene and prevent escalation of disorder.  See *Bernini*, 665 F.3d at 1004; see also *Carr v. District of Columbia*, 587 F.3d 401 (D.C.Cir. 2009); *Washington Mobilization Committee v. Cullinane,* 566 F.2d 107, 120 (D.C.Cir. 1977)("It is the tenor of the demonstration as a whole that determines whether the police may intervene; and if it is substantially infected with violence or obstruction the police may act to control it as a unit.")  Moreover, if there is doubt as to the conduct of a group as a whole, the group's failure to obey dispersal orders is a factor that supports treating the group as a unit.  *Washington Mobilization Committee*, 566 F.2d at 120; see also *Kelsey v. Ernst,* 933 F.3d 975 (8th Cir. 2019)(*en banc*); *Rudley v. Little Rock P.D.,* 935 F.3d 651 (8th Cir. 2019).

      The generic, formulaic allegations against the "supervisory officers" in general are not sufficient to preclude qualified immunity for the defendants named in ¶17.  Plaintiff herself ascribes the plan to execute a mass arrest to defendants Leyshock, Sachs and Howard.  ¶¶12-14, 43-44, 52.  The other defendants (including Boyher, Jemerson, Karnowski and Rossomanno) acted on the orders of their superiors.  ¶¶55, 60, 134, 185; see also ECF 23-5, pp. 29-30.  Their reliance on the directives of their superiors was entirely reasonable.  See *Ehlers v. City of Rapid*

8

*City,* 847 F.3d 1002, 1010 (8th Cir. 2017).  Nothing in the amended complaint shows that any other defendant had superior means of knowledge or any reason to question the judgment of Leyshock and Sachs, who had been involved in policing disorders during that entire weekend.  In short, defendants are qualifiedly immune to liability for the mass arrest.  See *Bell v. Neukirch,* 2020 U.S.App.LEXIS 33920 (8th Cir. 2020); *Garcia v. Doe,* 779 F.3d 84 (2d Cir. 2014).

Qualified immunity is particularly appropriate with regard to Plaintiff's fanciful claim in count XII that the mass arrest--"kettling" in Plaintiff's patois--is an application of excessive force in and of itself.  ¶295.  Clearly, there is no settled law that mass arrests are *per se* violations of the Fourth Amendment.  While it perhaps was not a model operation, there is no basis to conclude that defendants were objectively unreasonable in ordering or executing the mass arrest as such.  Mass arrests have been approved in similar circumstances.  *Bernini,* supra; *Garcia v. Doe,* supra; *Carr v. Dist. of Columbia,* 587 F.3d 401 (D.C.Cir. 2009).  Certainly it cannot be said that it was "clearly established" in 2017 that officers could not conduct a mass arrest of a crowd for violations of laws relating to traffic control and unlawful assembly.[4]

*Excessive force.*  In this case, Plaintiff wholly fails to allege that any named defendant directed force at her, other than "ripping" off her goggles and "roughly and tightly" handcuffing her.  ¶¶175, 179.  She pleads no injuries whatever from these actions.  It is indisputable that these actions were taken in the course of arresting Plaintiff.  Even if Plaintiff's theory of failure to

---

[4] The conclusory allegation that defendant O'Toole "ratified" Leyshock's mass arrest decision is just that:  a conclusion not supported by any allegations that, in fact, defendant O'Toole knew that there was no probable cause or arguable probable cause to arrest the crowd at Tucker and Washington.  It is likewise conclusory to assert that any defendant "knew" that there was no probable cause for the mass arrest.

9

intervene were viable, such use of *de minimis* force causing no injury is not actionable under the Fourth Amendment.[5]

It is well settled that not every slap or kick or other similar application of non-lethal force is a Fourth Amendment violation. See, e.g., *Graham v. Connor*, 490 U.S. 386 (1989). In *White v. Jackson*, 865 F.3d at 1080, the Eighth Circuit held that placing a knee on an arrestee's back in the process of the arrest was not excessive force, notwithstanding lack of resistance. In *Crumley v. City of St. Paul*, 324 F.3d 1003 (8th Cir. 2003), the Court held that handcuffing so tightly as to cause bleeding, without medical evidence or any other evidence of long-term injury, did not amount to a Fourth Amendment violation. Compare *Peterson v. Kopp,* 754 F.3d 594 (8th Cir. 2014) with *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011). Significantly, *Peterson* held that pepper spraying an arrestee in the face, causing pain and discomfort lasting several days and some "peeling" under the eyes, was a *de minimis* use of force, and the officer using the force was entitled to qualified immunity. 754 F.3d at 601.

Nothing in the record shows that the supervisory defendants personally participated in any use of force against Plaintiff. Plaintiff's allegations that *all* supervisory officers knew that excessive force was being used generally at Tucker and Washington do not suffice to impose liability to Plaintiff on such officers. Plaintiff's blunderbuss allegations are simply an effort to evade the necessity of pleading specific acts by specific defendants *against the Plaintiff personally.* Binding precedent precludes such artifice. Supervisors who did not make contact with Plaintiff, or cannot be shown to have been within close proximity when Plaintiff were

---

[5] The claim that defendant Rossomanno pepper sprayed Plaintiff on September 15 is likewise not a constitutional violation. It is at most a garden variety assault, for which, as Plaintiff's own pleading demonstrates, the state provides a complete and adequate remedy. *Baker v. McCollan*, 443 U.S. 137 (1979).

allegedly pepper sprayed, cannot be liable for the alleged use of force against Plaintiff. E.g., *Wilson v. Northcutt,* 441 F.3d 586 (8th Cir. 2006).

Even if the defendant supervisors saw spraying or handcuffing of Plaintiff, they are nonetheless entitled to qualified immunity because, at the time of the mass arrest (and still) it was not clearly established that pepper spray, handcuffing, or arm twisting or dragging were necessarily anything other than *de minimis* uses of force, causing no more than *de minimis* injury, and so defendants could reasonably believe that such force did not amount to a constitutional violation.

There simply is no authority to support Plaintiff's notion that *every* supervisory officer on the scene can be liable for the arrest of or injuries to Plaintiff on a "failure to intervene" theory, even though such officers never personally had any contact with Plaintiff. Existing precedent in mass arrest situations holds the opposite. *White v. Jackson,* supra; *Bernini,* supra; *Carr v. Dist. of Columbia,* supra; *Garcia v. Doe,* supra; see also *Dist. of Columbia v. Wesby,* 138 S.Ct. at 590 ("precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply").

In this case, under all the circumstances as derived from the amended complaint as a whole--and especially in light of the exhibits to the second amended complaint--it is clear that no one could believe that handcuffing arrestees, even tightly, would amount to more than *de minimis* force. In other words, especially in the unusual context of a mass arrest, a reasonable police officer could have believed that as long as the force used was *de minimis* and did not cause more than *de minimis* injury to an arrestee, the use of force was not unconstitutional. See *Shelton v. Stevens*, 964 F.3d 747 (8th Cir. 2020); *Blazek v. City of Iowa City,* 761 F.3d 920 (8th Cir. 2014) *A fortiori,* in the context of a mass arrest, defendant supervisors could also reasonably

11

have believed that as long as the pepper spray and handcuffing was *de minimis* force that did not obviously cause more than *de minimis* injury, the force being used by line officers was not unconstitutional. Thus, the goggle "ripping," or rough handcuffing of Plaintiff are within the realm of arguably *de minimis* force, and so those allegations do not defeat qualified immunity.

In sum, the claims in counts I, II, XII and XIII against defendants should be dismissed entirely, on the basis of failure to state a claim of a constitutional violation or on the basis of qualified immunity.

**3.     The conspiracy claim (count III) is barred by the intracorporate conspiracy doctrine or by qualified immunity.**

Defendants assume that the Court will adhere to Eastern District practice of refusing to consider the intracorporate conspiracy doctrine on a motion to dismiss. See ECF 42, pp. 9-10. Defendants, of course, adhere to their view that the doctrine is applicable, and that the practice in the Eastern District of refusing to apply it at the pleading stage is contrary to Supreme Court precedent, including *Ashcroft v. Iqbal,* supra. In any event, as Judge Sippel recognized in *Baude v. City of St. Louis,* No. 4:18-CV-1564-RWS, 2020 U.S. Dist. LEXIS 139770 (E.D. Mo. 2020), the unsettled state of the law regarding intracorporate conspiracies and §1983 compels recognition that defendant police officers are qualifiedly immune to the claim of conspiracy in this case. Judge Sippel's opinion canvasses the authorities fully, and defendants will not trouble the Court with further argument on the point. Count III must be dismissed as to all individual defendants.

**4.     The state law claims are barred by official immunity.**

As to the individual defendants, all of the state law claims on their face are either insufficient or barred by official immunity, notwithstanding Plaintiff's boilerplate allegations of

12

malice or bad faith, essentially for the same reasons as advanced in support of qualified immunity above. *State ex rel. Alsup v. Kanatzar,* 588 S.W.3d 187 (Mo.banc 2019); *Edwards v. McNeill,* 894 S.W.2d 678 (Mo.App.W.D. 1995). In addition, the claims of abuse of process and malicious prosecution are insufficient as a matter of state law. Although Plaintiff alleges issuance of a summons, she was never required to appear in response to the summons (which is not alleged to have issued from a court), there is no allegation that, in fact, any defendant initiated a charge against either plaintiff (see ¶125), there is no allegation of any improper or "perverted" use of process, and malicious prosecution actions are not favored. See *Baker v. St. Joe Minerals Corp.,* 744 S.W.2d 887 (Mo.App.E.D. 1988); *Koury v. Straight,* 948 S.W.2d 639 (Mo.App.W.D. 1997); *Hunter v. Karchmer,* 285 S.W.2d 918 (Mo.App. Spr. 1955). Finally, the claims of emotional distress are simply repackaged claims of assault or battery, and will not lie. *State ex rel. Halsey v. Phillips,* 576 S.W.3d 177 (Mo.banc 2019).

Here, again, defendants call the Court's attention to Judge Clark's opinion in *Burbridge,* supra, 430 F.Supp.3d 615ff. Identical claims of false imprisonment or arrest and malicious prosecution were lodged against the defendants in *Burbridge,* but, as Judge Clark demonstrates, they do not hold water. As in *Burbridge,* the Plaintiff in the case at bar at most alleges a colorable claim of assault and battery against Sgt. Rossomanno.

As the Court previously held, the supervisory defendants in their official capacities are not liable for punitive damages. ECF 42, pp. 10-11.

**5.     Even if some claims survive the motion to dismiss, the Court should decline to exercise supplemental jurisdiction over plaintiff's novel City Charter theory.**

In count XI of the proposed amended complaint, Plaintiff invokes a provision of the St. Louis City Charter to seek to impose vicarious liability on two new defendants, then acting

13

police commissioner O'Toole and acting director of public safety Deeken. The Charter provision (of which this Court can take judicial notice, Fed.R.Ev. 201) provides in pertinent part: "Each head of a department, office or division shall be responsible for the acts or omissions of officers and employees appointed by him, and may require bonds or other securities from them to secure himself." this Court should not exercise supplemental jurisdiction over this novel state claim.

The Charter provision, in force since 1914, has never been held to impose vicarious liability *per se* on appointing authorities in City government.  In general, the City is without power to create causes of action or impose liabilities not authorized by state law. *Yellow Freight Systems, Inc. v. Mayor's Comm. on Human Rights,* 791 S.W.2d 382 (Mo.banc 1990). The liability of government officers for acts of their subordinates is limited by state law. *Davis-Bey v. Mo. Dept. of Corrections*, 944 S.W.2d 294 (Mo.App.W.D. 1997). The City has no power to enlarge that liability, even with regard to its own officers, since in doing so it imposes a personal liability not recognized by state law. The absence of any reported case lending color to Plaintiff's reading of the Charter provision militates strongly against construing it as a blanket imposition of *respondeat superior* liability for appointing authorities. Further, the novelty of Plaintiff's theory raises an issue of construction of the City Charter, peculiarly a matter for the state courts. Thus, the very novelty of count XI warrants dismissal in accordance with 28 U.S.C. §1367(c)(1). See *Gregory v. Dillard's Inc.,* 565 F.3d 464, 477 (8th Cir. 2009)(*en banc*); *Birchem v. Knights of Columbus*, 116 F.3d 310 (8th Cir. 1997).

The meaning and application of the Charter section in question have never been determined by a state appellate court, and defendants cannot find that a state trial court has ever done so, either. If this Court considers that *Yellow Freight* does not conclusively preclude Plaintiff's theory, then it must venture into the realm of home rule law in Missouri. There are few

issues in Missouri law that are more complex than the authority of constitutional charter cities to alter or expand general state law. Countless Missouri cases have wrestled with drawing the line of demarcation between "home rule" powers and state law preemption. *Yellow Freight*, supra, is just one of many cases illustrating this point. See also *Coop. Home Care v. City of St. Louis*, 514 S.W.3d 571 (Mo.banc 2017) and cases cited therein. Whatever the proper construction of the cited Charter provision may be, that is an unsettled state law issue; if it is construed as Plaintiff desires, and if *Yellow Freight* does not compel the conclusion that it is preempted, then it also imports a further, complex question of state law.  For reasons of comity and federalism, at a minimum, this Court should decline to exercise supplemental jurisdiction over count XI. Cf. *Railroad Comm. of Texas v. Pullman Co.,* 312 U.S. 496 (1941).

## Conclusion

For the foregoing reasons, the third amended complaint should be dismissed with prejudice as to all federal claims, without prejudice as to counts V and XIV against defendant Rossomanno, and without prejudice as to count XI, remitting Plaintiff to state court on those claims.

> Respectfully submitted,
> MICHAEL A. GARVIN
> CITY COUNSELOR
> /s/ Robert H. Dierker
> Robert H. Dierker 23671(MO)
> Deputy City Counselor
> dierkerr@stlouis-mo.gov
> Brandon Laird 65564(MO)
> Abby Duncan 67766(MO)
> Associate City Counselors
> Adriano Martinez 69214(MO)
> Catherine A. Dierker 70025(MO)
> Assistant City Counselors
> 1200 Market St.
> City Hall, Rm 314
> St. Louis, MO 63103

314-622-3361  
Fax 314-622-4956

ATTORNEYS FOR DEFENDANTS