UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EMILY DAVIS,                          )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CASE NO. 4:18CV1574 HEA
                                      )
CITY OF SAINT LOUIS, MISSOURI,        )
et al.,                               )
                                      )
        Defendants,                   )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss Third

Amended Complaint, [Doc. No. 107].  Plaintiff opposes the Motion, which has

been fully briefed.  For the reasons set forth below, the Motion to Dismiss is

denied in part and granted in part.

### Facts and Background[1]

This and several other cases filed in this District share a general set of facts

regarding the actions of St. Louis Metropolitan Police Department ("SLMPD")

officers during peaceful protests following the September 15, 2017 verdict in *State

of Missouri v. Stockley*.  *See Ortega v. City of St. Louis*, No. 4:18 CV 1576 DDN,

---

[1] The recitation of facts is taken from Plaintiff's Third Amended Complaint and is set forth for the purposes of the pending motion to dismiss.  The recitation does not relieve any party of the necessary proof of any stated fact in future proceedings.

2021 WL 3286703 (E.D. Mo. Aug. 2, 2021);  *Aldridge v. City of St. Louis, Mo.*,

No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019); *Laney v.*

*City of St. Louis, Mo.*, No. 4:18-CV-1575 CDP, 2019 WL 2423308, (E.D. Mo.

June 10, 2019); *Laird v. City of St. Louis, Mo.*, No. 4:18-CV-1567 AGF, 2019 WL

2647273 (E.D. Mo. June 27, 2019); *Alston v. City of St. Louis, Mo.*, No. 4:18-CV-

1569 AGF, 2019 WL 2869896 (E.D. Mo. July 3, 2019); *Thomas v. City of St.*

*Louis, Mo.*, No. 4:18-CV-1566 JAR, 2019 WL 3037200 (E.D. Mo. July 11, 2019).

Those facts, as well as the allegations specific to Plaintiff Emily Davis, are

as follows:

In 2018, Plaintiff commenced this action after the St. Louis Metropolitan

Police Department ("SLMPD") arrested her and others on September 17, 2017.

The Third Amended Complaint alleges various claims under 42 U.S.C. § 1983

(Counts I, II, III, IV, XII, and XIII) and under Missouri state law (Counts V, VI,

VII, VIII, IX, X, XI, and XIV). Plaintiff has previously voluntarily dismissed

Counts IX and X.

Plaintiff asserts the remaining claims: Count I:  seizure under the Fourth and

Fourteenth Amendments against the defendant officers;[2] Count II: Violations of

---

[2]  The Third Amended Complaint defines "defendant officers" as defendants Lt. Col. Gerald
Leyshock; Lts. Timothy Sachs, Major Daniel Howard, Sergeants Randy Jemerson and Brian
Rossomanno.  Supervisor Officers: Kimberly Allen, Scott Aubuchon, Scott Boyher, Daniel
Chitwood, Bill Kiphart, James Joyner; Christi Marks, Michael Mayo Donnell Moore, and Paul
Piatchek;; Sergeants Eric Bartlett, Ronald Bergmann,  Michael Binz, James Buckeridge, Curtis

free speech, press, association, and assembly under the First and Fourteenth Amendments against the defendant officers; Count III: Conspiracy to violate civil rights against the defendant officers and defendant Lt. Col. Lawrence O'Toole; Count IV: Monell Claim against the City of St. Louis for Failure to Train, Discipline, Supervise and a Custom of Conducting Unreasonable Search and Seizures and Use of Excessive Force; Count V: Assault against the defendant officers; Count VI: False arrest against the defendant officers; Count VII: Abuse of process against the defendant officers and defendant Lt. Col. Lawrence O'Toole; Count VIII: Malicious prosecution against the defendant officers and defendant O'Toole; Count XI: Vicarious liability under the City of St. Louis Charter against defendants O'Toole and Charlene Deeken, Director of Public Safety for the City of St. Louis; Count XII: Excessive force under the Fourth and Fourteenth Amendments against the defendant officers; Count XIII: Failure to intervene in the use of excessive force against the defendant officers and defendant O'Toole; and Count XIV: Battery against defendant officers.

---

Burgdorf, Joe Carretero, Anthony Caruso, James Clark, Darnell Dandridge, Adam Duke, Kelly Fisher, Brandt Flowers, Samuel Gilman, Patrick Haug, John Jones, Matthew Karnowski, Robert Lammert, Joe Lankford, Robert Laschober, Tom Long, Kyle Mack, Mike Mandle, Michael Marks, Mark McMurry, James Murphy, Dennis Neal, Patricia Nijkamp, Kenneth Nizick, Donald Re, Bradley Roy, Daniel Schulte, Michael Scego, Timothy Schumann, Brian Seppi, Stephen Slama, Cliff Sommer, Timothy Turner, Scott Valentine, Charles Wall, Donnell Walters, Scott Weidler, Carolyn Wiener, and  Anthony Woznik.

Defendants seek to dismiss the Third Amended Complaint for several reasons including the failure to state a claim upon which relief can be granted. The individual defendants also assert they are entitled to qualified immunity on the counts asserting violations of §1983 and to official immunity for the state law claims. For purposes of this Motion to Dismiss, the Court must accept as true the facts as alleged in the Third Amended Complaint. *Great Rivers Habitat All. v. Fed. Emergency Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir. 2010).

On September 15, 2017, the Circuit Court of the City of St. Louis, Hon. Timothy Wilson, issued its findings and verdict in *State of Missouri v. Stockley* acquitting former SLMPD officer Jason Stockley of first-degree murder of Anthony Lamar Smith.  The verdict prompted some members of the St. Louis community to engage in protests in St. Louis and the surrounding communities. The protests concerned not only the verdict but broader issues, including racism and the use of force by police officers.   Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields" and carrying chemical agents.[3]

---

[3] An extensive recitation of the general factual allegations of this and the other cases can be found in *Ortega v. City of St. Louis,* Case No. 18CV1576 DDN, 2021 WL 3286703 (E.D.Mo. August 2, 2021).

The specific allegations regarding Plaintiff in this case are: On September 15, 2017, at around 8:30 PM, Plaintiff went to the Central West End neighborhood of St. Louis to join a clergy-led gathering.  Plaintiff and her friend parked on Lindell Boulevard and then rode bicycles to the site of the gathering on Euclid Avenue. Plaintiff took a photograph of people sitting in the street and posted it to Facebook at 8:34 PM. She observed several groups begin to march north on Euclid near Maryland Avenue. Plaintiff was unsure which direction the majority of protesters were headed, so she and her friend rode their bicycles west on Waterman Boulevard across Kingshighway to try to see where protesters were gathered. As Plaintiff and her friend approached Lake, she moved to meet the several dozen people gathered north of Waterman. Plaintiff and her friend approached the intersection of Waterman and Washington and saw a line of police officers walk into the intersection. Plaintiff observed Defendant Rossomanno shouting at the protesters to leave.

Plaintiff and others turned to leave and then noticed a police officer yank a bicycle out from under the man riding the bicycle which resulted in the man being knocked off the bicycle with the bicycle falling on top of him. Plaintiff observed that the man who was knocked off his bicycle had been carrying medical supplies in a crate attached to his bicycle. After the man fell from his bicycle, Plaintiff reached over to try to help him off the ground. As Plaintiff was trying to help the

man up from the ground, Defendant Rossomanno approached her from behind, called her by her name and yelled at her to leave the area. The fact that Defendant Rossomanno knew Plaintiff by name and yelled her name stood out to Plaintiff. At the time, Defendant Rossomanno was approximately five feet behind Plaintiff. Instantly and without warning, Defendant Rossomanno sprayed Plaintiff's posterior. Plaintiff estimates the spray came from 12 to 18 inches away. Defendant Rossomanno then yelled that Plaintiff had two seconds to get out of the area.

Without oral warning or other notice, Defendant Rossomanno continued toward Plaintiff, reached his arm around the front of her and sprayed her a second time in the face and hair. The spray caused Plaintiff pain and made it difficult for her to see.

Plaintiff discontinued assistance to the man who had been knocked from his bicycle, and she was led away to safety by her friend. Defendant Rossomanno made no attempt to arrest Plaintiff.

Before getting sprayed, Plaintiff did not hear any orders to disperse. Plaintiff was not breaking any laws at the time, and nothing about the situation would lead any unbiased observer to believe that Defendant Rossomanno was in any danger at the time he sprayed Plaintiff.

On September 17, 2017, Plaintiff and her friend arrived at a march that was underway in downtown St. Louis. When the march ended near the police

6

headquarters, Plaintiff gathered to talk to acquaintances.  She left the area near the police headquarters by bicycle to use the portable restrooms set up near the library.

After using the restroom, Plaintiff rode to her car parked on Chestnut before riding her bicycle to find the protesters again. Plaintiff caught up to the marching protesters and began walking her bicycle near the rear of the march alongside Darryck Dean from the U.S. Department of Justice's Community Relations Services. Plaintiff and Dean came upon broken flowerpots but did not see or hear the pots being broken. She did not engage in any violence or destruction of property. Plaintiff observed an individual running from the front of the march back toward Plaintiff and yell that tear gas had been deployed at the front of the march. Plaintiff and others near the back of the march looked for an exit. It was now after 9:00 PM, and the activity downtown had virtually ceased.

As Plaintiff and her friend were returning to Plaintiff's car, they came across a police line blocking Locust east of Tucker Boulevard.  The police officers issued a dispersal order to the ten or fewer civilians in the area and directed them to head either north or west. Plaintiff and others turned to exit west on Locust toward Tucker but were met by a line of police vehicles blocking Tucker south of the intersection.

Upon meeting the line of police vehicles, Plaintiff and others turned north on Tucker. As Plaintiff was stopped talking with friends, she heard "banging noises"

and saw a line of SLMPD officers advancing from the north.  The sound that she heard was SLMPD officers pounding their batons in unison.  Plaintiff turned away from the advancing officers and noticed another group of SLMPD officers advancing from the south.

After noticing SLMPD officers closing in from the north and south, Plaintiff and others attempted to leave the area by going west on Washington. She heard no dispersal order or commands. As Plaintiff and others were attempting to leave west on Washington, Plaintiff encountered another set of SLMPD officers blocking the exit. As she turned back east on Washington to Tucker, she encountered a fourth line of SLMPD officers on bicycles blocking the egress east on Washington.

The fourth line of SLMPD officers began shouting that everyone was being arrested. Plaintiff and her friend sat next to their bicycles.  The SLMPD officers began yelling at the civilians to "get down."

As Plaintiff sent a phone message to friends that she was being arrested, an SLMPD officer approached her, took her phone, and threw the phone to the ground. A second SLMPD officer approached Plaintiff and ripped the goggles off her face and pointed a spray can in her face while yelling unintelligibly. Plaintiff could not hear the SLMPD officer because the officer's full gas mask covered his face.

Plaintiff tried to explain to the SLMPD officer that she could not understand his commands. Instead of listening, the SLMPD officer continued pointing the spray can at Plaintiff's face.

Plaintiff observed other civilians turning over to face the ground with their arms spread. Plaintiff inferred this was what the officer was yelling at her to do, and she complied.

An unidentified officer grabbed Plaintiff's hands roughly and tightly zip tied them behind her back.

Plaintiff observed her friend sitting quietly and compliantly several feet away and being sprayed repeatedly in the face by an officer. Plaintiff saw liquid running down his face and soaking into his white shirt, turning it orange.

A different unidentified officer grabbed Plaintiff up off the ground and propped her against a wall placed in a seated position with her feet out in front of her. She was seated next to her friend, who was unable to see and was bleeding from a swollen and cut lip. Plaintiff observed her friend repeatedly ask for and be denied water and medical attention.

Plaintiff overheard officers joke that her friend was so covered in pepper spray that they did not want to be the one that had to handle him.

Plaintiff and others were then taken to vans to be photographed, identified, and documented. Plaintiff's arrest slip listed Defendant Rossomanno as the arresting of officer.

## Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss all or part of a complaint for its failure to state a claim upon which relief can be granted. To overcome a motion to dismiss under Rule 12(b)(6) a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "more than labels and conclusions." *Id*. at 555. Such a complaint will "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and will state a claim for relief that rises above mere speculation. *Twombly*, 550 U.S. at 555. In reviewing the pleadings under this standard, the Court must accept Plaintiff's factual allegations as true and draw all inferences in Plaintiff's favor, but the Court is not required to accept the legal conclusions Plaintiff draws from the facts alleged. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). The Court additionally "is not required to divine the litigant's intent and create claims that are not clearly raised, . . . and it need not conjure up unpled allegations to save a complaint."

*Gregory v. Dillard's, Inc*., 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (citations omitted).

## Discussion

Defendants claim they are entitled to qualified immunity on Plaintiff's § 1983 claims under the First and Fourth Amendments, that the § 1983 civil conspiracy claim is barred by the intracorporate conspiracy doctrine, that the state law claims are barred by official immunity or are insufficient as a matter of law, and that the Monell claim against the City fails to allege an unconstitutional custom. Defendants also ask the Court to decline supplemental jurisdiction over Plaintiff's claim under the City's Charter.

Before addressing the parties' substantive arguments, the Court must first address defendants' request that the Court consider exhibits attached to Plaintiff's prior complaints.

## Exhibits Attached to Earlier Complaints

Unlike the prior complaints, Plaintiff did not attach any exhibit to this complaint. Defendants assert the Court should still consider, for the purposes of this motion, certain exhibits attached to the prior complaints, by finding them necessarily embraced by the Third Amended Complaint, or by taking judicial notice of them. The exhibits referenced by defendants are the exhibits drawn from *Ahmad*. These exhibits are not properly before the Court for

11

consideration. "When a plaintiff files an amended complaint, the original

complaint is superseded and has no legal effect." *Thomas v. United Steelworkers*

*Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014); see also *Hoefling v. City of*

*Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("[W]hen [plaintiff] filed the second

amended complaint, the first amended complaint (and its attached exhibits) became

a legal nullity.").

Plaintiff abandoned the exhibits attached to the earlier complaints by not

including them in the current complaint. While a court may consider documents

necessarily embraced by a complaint, but not attached, it may only do so for

"documents whose contents are alleged in a complaint and whose authenticity no

party questions." See *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018). Nor will the

Court take judicial notice of the content of the exhibits. Federal Rule of Evidence

201(b) allows a court to take judicial notice of "a fact that is not subject to

reasonable dispute" either because it is generally known within the Court's

jurisdiction or because it "can be accurately and readily determined from sources

whose accuracy cannot reasonably be questioned." The facts of which Defendants

ask the Court to take judicial notice are disputed by Plaintiff. While the Court

could take judicial notice that a certain person testified at a court hearing, it is

inappropriate for the Court to take judicial notice of the contents of a person's

testimony at a contested hearing. The Court will not consider defendants'

requested exhibits in deciding this motion to dismiss.

**Qualified Immunity**

Defendants assert they are entitled to qualified immunity on plaintiff's §

1983 claims under the First and Fourth Amendments. Qualified immunity protects

governmental officials from civil liability if "their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Officials are entitled to qualified immunity unless a plaintiff can show "(1) a

deprivation of a constitutional right, and (2) that the right was clearly established at

the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th

Cir. 2021). A court may address either inquiry first. *Id*.

"To be clearly established, the 'contours of the right must be sufficiently

clear that a reasonable official would [have understood] that what he is doing

violates that right." *Quraishi v. St. Charles Cty., Mo*., 986 F.3d 831, 835 (8th Cir.

2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The law, at the

time of the alleged violation, must give officials "'fair warning' their conduct was

unlawful." *Id*. (quoting *Sisney v. Reisch*, 674 F.3d 839, 845 (8th Cir. 2012)).

Although there may be the "rare obvious case" where it is clear the officer's

conduct is unlawful without precedent addressing a similar circumstance, most

cases will require precedent, controlling authority, or a robust consensus of cases of persuasive authority finding the conduct at issue is unconstitutional. *Id*.

**Plaintiff's Arrest**

In Count I, Plaintiff alleges Defendant Rossomanno and the unidentified officers unreasonably seized her.  She claims the defendant officers arrested her without probable cause in violation of the Fourth Amendment. She also alleges the defendant officers' use of kettling without warning was an unreasonable seizure. The defendant officers argue they had probable cause to arrest plaintiff therefore they did not violate her constitutional rights. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (quoting *Borgman v. Kedley*, 646 F.3d 518, 522-23 (8th Cir. 2011)).

"Probable cause exists when the totality of facts known at the time of the arrest would justify a reasonable person in believing that the individual has committed or is committing an offense." *Hosea v. City of St. Paul*, 867 F.3d 949, 955 (8th Cir. 2017). "Arguable probable cause exists even when an officer mistakenly arrests a suspect believing the arrest is based in probable cause if the mistake is objectively reasonable." *Id*. (internal quotations omitted). Thus, for her claims of unlawful seizure and retaliatory arrest, plaintiff must show the defendant

14

officers did not have probable cause to arrest her. While probable cause for an

arrest is generally focused on the one arrestee's actions, law enforcement officers

may arrest a large group of individuals if the officers have probable cause

that the group is committing a crime and acting as a unit. See *Bernini v. City of St.

Paul*, 665 F.3d 997 (8th Cir. 2012). In *Bernini*, during protests in St. Paul,

Minnesota, there were various reports of property damage around the City. *Id*. at

1001. Consequently, after the protest permits expired, the police commander

ordered that no one be allowed to enter the downtown area. *Id*. A large group

attempted to move toward downtown and officers blocked them. *Id*. The officers

ordered the group to back up and deployed stinger blast balls against them. *Id*.

Officers reported numerous objects were thrown at them. *Id*. The crowd grew in

size and started chanting in unison and yelling profanities. *Id*. The officers

continued to use non-lethal munitions to keep the crowd moving away from

downtown. *Id*. at 1002. Officers decided to encircle the crowd in a park. *Id*. They

announced everyone was under arrest and for everyone to sit down with their

hands on their heads. *Id*. The officers then attempted to determine who had been at

the initial altercation and who were innocent bystanders, eventually releasing

approximately 200 people and arresting around 160 others. *Id*. The Eighth Circuit

held that the officers had probable cause to conduct the mass arrest because the

individuals arrested acted as a unit in committing a crime. *Id*. at 1003-04. The

Eighth Circuit found the officers could have reasonably concluded that the group had committed a crime and were acting as a unit because the individuals donned gas masks and other facial coverings, flags waved from within the crowd, several people shouted profanities and taunted the officers, members shielded themselves behind two large signs, and members chanted in unison. *Id*. at 1003-04. The Eighth Circuit also noted that the officers did not arrest everyone but attempted to discern who had been a part of the initial altercation where the unlawful activity had occurred and who had not, releasing approximately 200 people. *Id*. at 1005.

In this case, the defendant officers assert they had probable cause to conduct a mass arrest of the group for peace disturbance, unlawful assembly, or refusal to disperse. As it relates to this case, in Missouri, a person commits the offense of peace disturbance if he: (2) Is in a public place or on private property of another without consent and purposely causes inconvenience to another person or persons by unreasonably and physically obstructing: (a) Vehicular or pedestrian traffic; or (b) The free ingress or egress to or from a public or private place. Mo. Rev. Stat. § 574.010 (eff. Jan. 1, 2017). A person commits the offense of unlawful assembly if he "knowingly assembles with six or more other persons and agrees with such persons to violate any of the criminal laws of this state or of the United States with force or violence." Mo. Rev. Stat. § 574.040 (eff. Jan. 1, 2017). A person commits the offense of refusal to disperse "if, being present at the scene of an unlawful

16

assembly, or at the scene of a riot, he or she knowingly fails or refuses to obey the

lawful command of a law enforcement officer to depart from the scene of such

unlawful assembly or riot." Mo. Rev. Stat. § 574.060 (eff. Jan. 1, 2017). Other

cases from this Court have addressed the mass arrest that occurred on September

17. The defendant officers ask the Court to follow the holding in *Burbridge v. City*

*of St. Louis*, Missouri, 430 F. Supp. 3d 595 (E.D. Mo. 2019), which found that

officers had probable cause to conduct the mass arrest. In *Burbridge*, Judge Clark

found the officers had grounds to believe the plaintiffs were part of a unit observed

violating the law. 430 F. Supp. 3d at 610. He found that officers declared the area

an unlawful assembly, issued multiple dispersal orders to the crowd, and then

arrested those who refused to follow the lawful commands of the officers. *Id*. The

procedural posture of *Burbridge* differs significantly from this case. Judge Clark

decided a motion for summary judgment with proffered evidence. *Id*. at 604-08. In

this case, the Court must accept as true, and may only consider, Plaintiff's

allegations in her Third Amended Complaint. In *Burbridge*, the undisputed facts

included individuals throwing rocks and other objects at officers, and the officers

giving dispersal orders through a public address system. *Id*. at 605. The Third

Amended Complaint does not include any such allegations. The factual allegations

in this case more closely align with those in *Baude v. City of St. Louis*, 476 F.

17

Supp. 3d 900 (E.D. Mo. 2020). The events in *Baude* concern the same night in question, September 17, and the same alleged kettling event. *Id*. at 907.

In this case, there are no allegations the crowd acted as a unit. There are no allegations that the group chanted in unison, moved as a group, carried signs together, or in any way acted as if they were a unit. While some vandalism did occur hours before the mass arrest, officers ordered that group to disperse and there are no allegations that they did not, that they continued to vandalize property, or that they moved as a group towards Tucker and Washington.

It is not reasonable to assume the group of individuals arrested in mass are the same group that engaged in the earlier vandalism when the area includes many businesses, including shops and restaurants, as well as residential buildings and the mass arrest occurred two to three hours after the vandalism occurred.

Nor are there any allegations to support that those in the group arrested committed any crimes. Plaintiff alleges those arrested stood still, with their hands up. No one acted violently or aggressively and many asked to be allowed to leave, peacefully. The scene was relatively calm before the officers began using chemical agents and deploying force against the group. The allegations show no credible threat of force or violence to officers or property, or that any individuals were disobeying police orders. Plaintiff's allegations do not establish that the officers in this case could reasonably have concluded that the group was acting as a unit or

violating the law. Under these alleged facts, the defendant officers could be found to have violated the Fourth Amendment by arresting plaintiff, and others, without probable cause.

The defendant officers also argue they are entitled to qualified immunity because it was not clearly established that they could not conduct a mass arrest of a crowd violating traffic laws and unlawfully assembling. In 2012, *Bernini* clearly established that to conduct a mass arrest there must be probable cause that the group is committing a crime and acting as a unit. 665 F.3d at 1003-04. The facts in *Bernini* are not dissimilar to the general situation presented in this case. However, unlike in *Bernini*, where the crowd chanted together, carried signs together, and waved flags together, there are no factual allegations in this case to support the defendant officers' contention the group was acting as a unit, or that officers could perceive them to be doing so. Nor is it alleged that any of the officers in this case attempted to determine which individuals were part of a unit acting unlawfully and which were swept up incidentally, as the officers did in *Bernini*.

Determining whether the force used to effectuate a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. *Graham v. Connor*, 490 U.S. 386, 396, (1989). The reasonableness inquiry is an objective

19

one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Brown v. City of Golden Valley*, 574 F.3d 491 (2009). Circumstances relevant to the reasonableness of the officer's conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight." *Id*.at 497. *Poole v. City of Lincoln*, No. 4:21CV3030, 2021 WL 2935899, at *8 (D. Neb. July 13, 2021)(finding plaintiff's allegations of Fourth Amendment right terminating her freedom of movement stated a cause of action sufficient to avoid qualified immunity challenge.) Because Plaintiff's allegations did not indicate Defendant officers had probable cause to arrest her, and it was clearly established at the time of the mass arrest on September 17, 2017, that to conduct a mass arrest, officers must have probable cause the group is committing a crime and acting as a unit, they are not entitled to qualified immunity.

Defendants also argue that the generic allegations against "supervisory officers" are not sufficient to preclude qualified immunity for the defendants named in Paragraph 17.  There are no specific allegations with regard to certain of these "supervisory defendants" other than stating who the parties are in the action. Those allegations alone are not enough to establish a defendant's liability. However, the remainder of the complaint includes specific allegations that

20

individual defendants participated in an unlawful arrest of plaintiff. These allegations include that Rossomanno violated Plaintiff's rights on September 15, 2017. Leyshock, Sachs, Boyher, Jemerson, Karnowshi and Rossomanno and the other supervisor officers directed their subordinates to make arrests, observed their subordinates assaulting compliant citizens and did nothing to intervene. These are sufficient, specific allegations to state a claim these defendants participated in plaintiff's allegations in Counts I, II, XII, and XIII.

Lt. Col. O'Toole, named in paragraph 10, is not named as a defendant in Count I or II of the Third Amended Complaint. Counts I and II are against "Defendant Officers." The complaint defines "Defendant Officers" as the individuals listed in paragraphs 12-17. Those paragraphs do not include defendant Lt. Col. O'Toole.

Finally, defendants argue Boyher, Jemerson, Karnowski and Rossomanno, acted on the orders of their superiors, which is entirely reasonable, so they are entitled to qualified immunity. The Eighth Circuit has held that it can be objectively reasonable for one officer to rely on an assurance of probable cause from another officer. See *Bell v. Neukirch*, 979 F.3d 594, 609 (8th Cir. 2020); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1010 (8th Cir. 2017). However, that reliance must be reasonable. *Bell*, 979 F.3d at 609; *Ehlers*, 846 F.3d at 1010. Based on the allegations in the complaint, it would not be reasonable for these officers to

rely on the assurance of their superiors that the crowd was not disbursing. The allegations indicate the officers saw the group acting peacefully, obeying orders, and not committing a crime. Furthermore, an individual officer is not entitled to qualified immunity just because his superior told him to engage in unconstitutional conduct. See *Quraishi v. St. Charles Cty.*, Mo., 986 F.3d 831, 837 (8th Cir. 2021) ("Anderson is not entitled to qualified immunity even if his sergeant told him to deploy the tear-gas."). There is no legal support for the proposition that "a government official is immune if a superior instructs him to engage in unconstitutional conduct." *Id*. The defendants are not entitled to qualified immunity simply because they followed orders. The Court denies the motion to dismiss on this ground.

**Excessive Force**

In Count XII, Plaintiff asserts a claim under § 1983 for a violation of her right to be free from excessive force under the Fourth Amendment. She alleges the defendant officers used excessive force against her when they pepper sprayed her on September 15, 2017 and painfully zip cuffed her on September 17, 2017. Defendants argue that plaintiff does not allege the supervisory officers knew other officers were using excessive force, and if they did know, it was reasonable for them to believe it was necessary. They also argue it was not clearly established that the use of pepper spray, tight handcuffing, arm twisting, or the brief dragging of an

arrestee constitutes anything more than *de minimis* use of force. Thus, they argue they are entitled to qualified immunity. "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

The Court considers the claim from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. "Circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989)(internal citations and quotations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id*. at 396-97. "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499.

Plaintiff alleges she was sprayed on her back, face, and hair, which was painful to her and made it difficult for her to see. An officer ripped the googles off her face and pointed a spray can in her face. Her hands were roughly and tightly zip tied behind her back. She was grabbed off the ground and propped against a wall.

Since 2011, the Eighth Circuit has made it clear that a *de minimis* injury does not preclude a Fourth Amendment violation. *Chambers v. Pennycock*, 641 F.3d 898, 906 (8th Cir. 2011); *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) ("While a *de minimis* injury does not preclude a claim of excessive force. . ."). The appropriate inquiry is the nature of the force applied, not the degree of injury inflicted. *Chambers*, 641 F.3d at 906. Defendants' argument is unavailing. Viewing the facts in the light most favorable to Plaintiff, the use of pepper spray against her was not objectively reasonable. See *Quraishi*, 986 F.3d at 840 (8th Cir. 2021) (The use of pepper spray to arrest an unarmed, compliant suspect can be excessive force). The alleged crimes officers were detaining her for were non-violent misdemeanors. There is no indication she was fleeing or resisting arrest, that she posed an immediate threat to the officers' safety, or that she disobeyed any officer's commands. Plaintiff alleges that the use of force caused a chilling effect on Plaintiff, who is now less likely to participate in free public discourse.  She also contends the kittling was objectively unreasonable and

constituted excessive force. The kittling, *i.e.*, forcing Plaintiff along with other individuals into a single area and not allowing them to leave, did not involve any force against Plaintiff and therefore cannot withstand challenge.

Plaintiff has also not established that officers applying zip ties too tightly violates the Constitution. The Eighth Circuit previously found that an officer who applies handcuffs so tightly they break a suspect's wrist uses excessive force in violation of the Fourth Amendment. *Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002). It has not been clearly established that anything less than this constitutes excessive force. Here, Plaintiff alleges the zip ties were causing her pain. This allegation does not rise to the level of force established in *Kukla*, where the suspect's wrist was broken from the handcuffs. Because it was not clearly established that applying zip ties too tightly violates the Fourth Amendment, the defendant officers are entitled to qualified immunity on this portion of Plaintiff's claim.

Defendants also argue it is not clearly established that the other alleged uses of force were unconstitutional. In May 2017, the Eighth Circuit established that it is unreasonable to use pepper spray against a non-resisting, non-fleeing individual, suspected of a non-violent misdemeanor. *Tatum v. Robinson*, 858 F.3d 544, 548-550 (8th Cir. 2017). In *Blazek*, the Eighth Circuit established it was excessive force to jerk an individual up by his arms with sufficient force to cause an injury to the

individual's shoulder when the individual was not resisting arrest, posed no threat

to officers, was not suspected of a serious offense, and was handcuffed and under

control. 761 F.3d at 925. Plaintiff was not resisting arrest. At the time the

defendant officers used force against Plaintiff by pepper spraying her and pulling

her up, it was clearly established their actions would violate the Fourth

Amendment. The defendant officers are not entitled to qualified immunity, on the

motion to dismiss the complaint, on Count XII as it relates to plaintiff being pepper

sprayed and pulled up. Defendants argue the supervisory defendants who did not

personally pepper spray or drag Plaintiff cannot be liable for the alleged uses of

excessive force. Officers who do not directly use excessive force but fail to

intervene to prevent the use of excessive force by another officer, may be liable for

violating the Fourth Amendment. *Nance v. Sammis*, 586 F.3d 604, 611-12 (8th Cir.

2009). As Judges Sippel and Noce found in *Baude* and *Ortega*, respectively, at this

stage of litigation, Plaintiff only needs to allege facts sufficient to state a plausible

claim for liability. *Baude* 476 F. Supp. 3d at 914; *Ortega*, 18CV1576 DDN, 2021

WL 3286703 at * 12. Plaintiff  alleges the supervisory defendants were present at

the mass arrest, witnessed officers using excessive force, and failed to intervene.

She also alleges the supervisory defendants issued orders allowing the use of force

against a non-violent, largely compliant crowd. These allegations are sufficient to

state a claim against the supervisory defendants. See *Wagner v. Jones*, 664 F.3d

259, 275 (8th Cir. 2011) ("The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see."). In *Nance*, the Eighth Circuit held that, as of June 2007, it was clearly established that "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Id*. The supervisory defendants are not entitled to qualified immunity on Count XII.

**Conspiracy**

In Count III, Plaintiff asserts a § 1983 civil conspiracy claim against the defendant officers and Lt. Col. O'Toole. Defendants ask the Court to apply the intracorporate conspiracy doctrine  or, in the alternative, find defendants are entitled to qualified immunity because it is not clearly established that the intracorporate conspiracy doctrine does not apply. The intracorporate conspiracy doctrine provides that "a local government entity cannot conspire with itself through its agents acting within the scope of their employment." *Kelley v. City of Omaha*, Neb., 813 F.3d 1070, 1078 (8th Cir. 2016) (quoting *L.L. Nelson Enters., Inc. v. City of St. Louis, Mo*., 673 F.3d 799, 812 (8th Cir. 2012)). The Eighth Circuit has only applied the doctrine to 42 U.S.C. § 1985 claims; it has not yet determined if it applies to § 1983 claims. This Court has declined to apply the doctrine in this case. See e.g., *Newbold v. City of St. Louis*, No.4:18 CV 1572

HEA, 2019 WL 3220405, at *6 (E.D. Mo. Jul. 16, 2019) (collecting cases). More recently, Judge Noce declined to apply it at the pleading stage in the absence of direction from the Eighth Circuit. *Ortega*, 18CV1576 DDN, 2021 WL 3286703

The Court again declines to apply the doctrine for the same reasons. Therefore, defendants are not entitled to qualified immunity on plaintiff's § 1983 claim by virtue of the intracorporate conspiracy doctrine.

**State Law Claims**

Defendants assert all of Plaintiff's state law claims either are barred by official immunity or fail as a matter of law.

**Official Immunity**

"Under Missouri law, public officials acting within the scope of their authority are not liable in tort for injuries arising from their discretionary acts or omissions." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015). Official immunity only protects officials who act within the course of their official duties and without malice. *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. 2019). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Id*. at 190, n. 7. "[A] police officer's decision to use force in the performance of his duties is discretionary." *Davis*, 794

28

F.3d at 1013. The acts alleged in plaintiff's Third Amended Complaint are discretionary and thus, defendants may be entitled to official immunity.

Plaintiff's allegations are sufficient to allege defendants did not act without malice. The allegedly unnecessary use of force against non-resisting individuals, such as plaintiff, the inflammatory and disparaging remarks made by SLMPD officers before, during, and after the incident, and the comparison between SLMPD's response to the Stockley protests and other protests not related to police misconduct may reasonably support a finding of malice or bad faith. See *Ortega*, 2021 WL 3286703, at * 17; *Street*, 2021 WL 677909 at *10. Official immunity is not appropriate at this stage of the litigation.

**False Arrest**

Defendants assert Plaintiff's false arrest claim should be dismissed for the same reasons they should be granted qualified immunity for the § 1983 unlawful arrest claim, citing *Edwards v. McNeill*, 894 S.W.2d 678 (Mo. Ct. App. 1995) in support. *Edwards* provides that justification is a complete defense to a cause of action for false arrest. *Id*. at 683. Because plaintiff's allegations do not establish the defendants acted with probable cause to arrest plaintiff, the Court denies the motion to dismiss the claim for false arrest.

**Abuse of Process, Malicious Prosecution**

In Counts VII and VIII, Plaintiff asserts claims of abuse of process and malicious prosecution against the defendant officers and Lt. Col. O'Toole. To assert a claim of malicious prosecution, a plaintiff must establish: "(1) the commencement of a prosecution against the plaintiff, (2) the instigation of that prosecution by the defendant, (3) the termination of the proceeding in favor of the plaintiff, (4) the want of probable cause for the prosecution, (5) that defendant's conduct was actuated by malice, and (6) damage to the plaintiff." *Baker v. St. Joe Minerals Corp.*, 744 S.W.2d 887, 888 (Mo. Ct. App. 1988). Instigation requires affirmative action either through advice, encouragement, pressure, or something similar. *Id*. at 889. "The providing of honest information" does not constitute instigation, although supplying false information may. *Id*. To establish a claim for abuse of process, a plaintiff must show: "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Trustees of Clayton Terrace Subdivision v. 6 Clayton Terrace, LLC*, 585 S.W.3d 269, 277 (Mo. 2019) (quoting *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990)). Both malicious prosecution and abuse of process require a legal process be initiated. *Id*.; *Baker*, 744 S.W.2d at 888. The Third Amended Complaint contains only two factual allegations related to either of these claims.

One is that all of the arrestees were given summonses showing they had been charged with "failure to disperse" and instructing them to appear in St. Louis Municipal Court on October 18, 2017. (Doc. 101, at ¶ 114). The second is that on October 13, 2017, the City Counselor's office sent another letter saying it is reviewing the evidence in order to decide whether or not to file charges and the arrestee has no obligation to appear in Municipal Court on October 18, 2017. (Doc. 101, at ¶ 122). There are no allegations that Plaintiff was charged with a crime, nor are there any allegations about who instigated the issuance of the initial summons. While Plaintiff alleges Defendants arrested her, she does not allege those same officers were involved in issuing the summons. Consequently, she does not allege sufficient facts to state a claim for abuse of process or for malicious prosecution. Counts VII and VIII will be dismissed. See *Ortega*, 2021 WL 3286703, at * 18 (dismissing claims of malicious prosecution and abuse of process because plaintiffs did not allege any facts showing any defendant had a role in the initiation of any proceedings against the plaintiffs); *Street*, 2021 WL 677909 at *10 (same).

**Vicarious Liability under the City's Charter**

In Count XI, Plaintiff asserts a novel theory of liability. She alleges Lt. Col. O'Toole and Charlene Deeken are vicariously liable under the City's Charter. According to Plaintiff, Article VIII, Section 5 of the Charter states, "[e]ach head of a department, officer or division shall be responsible for the acts or omissions of

31

officers and employees appointed by him and may require bonds or other securities from them to secure himself." (Doc. 101, at ¶ 287). Plaintiff alleges Lt. Col. O'Toole and Deeken were officers and employees of the Chief of Police and were acting in the scope of their employment when they committed the acts alleged in the Third Amended Complaint. *Id*. at ¶¶ 288, 289. In *Ortega* and *Street*, Judges Noce and Perry agreed with Defendants and declined supplemental jurisdiction.

Under 28 U.S.C. § 1367(c)(1), the Court may decline supplemental jurisdiction over a claim that raises a novel or complex issue of State law. The undersigned agrees with Judges Noce and Perry that supplemental jurisdiction should be declined with regard to this novel and complex issue of State law.

## Conclusion

Based upon the foregoing, Defendants' motion will be denied in part and granted in part.[4]

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, [Doc. 107], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the motion is granted as to:

the Count VII claim of abuse of process;

---

[4] Defendants do not challenge the Monell claim in Count IV in their motion to dismiss.  This may be because in the Court's Order of July 23, 2019, the Court concluded the allegations in the Second Amended Complaint did not state a claim for failure to train.  The Third Amended Complaint sets forth different details of this claim.  As such, it will remain pending.  Defendants will be given leave to file a motion to dismiss as to Count IV if they are so inclined in light of holding *Ortega.*

the Count VIII claim of malicious prosecution;

the Count XI claim of vicarious liability under the Charter of the City of St. Louis;

the Count XII claim against the defendant officers as it relates to the alleged act of kettling plaintiff and to the alleged act of applying the zip ties on her too tightly.

**IT IS FURTHER ORDERED** that the Motion is denied in all other

respects.

Dated this 13th day of September,  2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE